UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | Criminal No.  05-300M (AK) |
| : | |
| **ROBERT A. TINNEY,** : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION FOR RECONSIDERATION OF CONDITIONS OF RELEASE**

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Response to Defendant's Motion for Reconsideration of Conditions of Release. As grounds for its opposition the United States cites the following points and authorities and any such additional points and authorities which may be cited at any hearing on defendant's motion.

**Facts**

In December of 2004, based upon information received from a reliable and confidential source (hereinafter "CW"), the Federal Bureau of Investigation initiated the investigation of Robert Tinney that lead to the present case. The investigation may be summarized as follows:

1. On February 4, 2005, the CW arranged to meet with the defendant to purchase fifty grams of heroin. The CW arranged the transaction with the defendant via cellular telephone call to 202-374-3389. That number is subscribed to Robert Tinney, XXX XXXX XXXXXX, X.X., Washington, D.C. During this conversation, the CW and the defendant agreed to meet later that day for a narcotics transaction. Later on February 4, 2005, the CW met with the defendant and made a controlled purchase of approximately fifty grams of heroin for $4,250. The transaction took place

at a Shell gas station at 25th Street and Pennsylvania Avenue, S.E., Washington, D.C. This transaction was recorded on both audio and video. The defendant arrived for the transaction driving a 1997 green Chevrolet Blazer with Maryland license plate 130M156. That vehicle is registered to Robert Alonzo Tinney, XXXX XXXXX XXXXXX, Fort Washington, Maryland. The material purchased by the CW was later analyzed by the DEA laboratory and found to be a substance containing heroin with a strength of twenty-five percent.

    2.    On March 3, 2005, the CW arranged a second meeting with the defendant to purchase fifty grams of heroin. The CW had arranged the transaction with the defendant via cellular telephone call to 202-374-3389. During this conversation, the CW and the defendant agreed to meet later that day for a narcotics transaction. Later on March 3, 2005, the CW met with the defendant and made a controlled purchase of approximately fifty grams of heroin for $4,250. That transaction took place in Northeast, Washington, D.C. The transaction was again recorded on both audio and video. The defendant again arrived in the 1997 green Chevrolet Blazer with Maryland license plate 130M156. The material purchased by the CW was later analyzed by the DEA laboratory and found to be a substance containing heroin with a strength of seventy-one percent.

    3.    On May 10, 2005, the CW met with the defendant at the corner of Malcolm X Avenue and Martin Luther King Jr. Avenue, S.E., Washington, D.C. The defendant advised the CW that he had recently been supplied with 200 grams of heroin HCL by his supplier. The defendant also stated that he would sell CW fifty grams of heroin HCL on May 11, 2005. The CW advised that the cost for the fifty grams from the defendant would be eighty-five dollars per gram.

    4.    On May 19, 2005, the CW met with the defendant and made arrangements for a narcotics transaction in which the defendant would sell thirty grams of heroin to the CW. After the

meeting law enforcement agents followed the defendant to the premises at XXXX X XXXXXX, XX, XXXXXXXXX XXX, Washington, D.C. The defendant entered the premises and spent approximately ten minutes inside before driving to the intersection of Martin Luther King Avenue and Malcolm X Avenue in Southeast, Washington, D.C., where he entered the vehicle occupied by the CW. In the vehicle, which was equipped with a hidden video recorder, the defendant distributed approximately thirty grams of heroin to the CW in exchange for $3,000. The defendant left the vehicle and remained under law enforcement surveillance until he was arrested. The substance the defendant gave to the CW was field tested positive for the presence of heroin. Additionally, seized from the defendant's person at the time of his arrest was the $3,000 in government funds that the CW paid to the defendant for the thirty grams of heroin.

5.   During the course of the FBI investigation, the defendant was seen entering and exiting the apartment located at XXXX X XXXXXX, X.X., XXXXXXXXX XXX, Washington, D.C. Additionally, the green Chevrolet Blazer registered to the defendant was observed parked outside that apartment building on several occasions. On May 19, 2005, a search of the premises was conducted pursuant to a search warrant. During the search agents seized a .38 revolver, ammunition, drug paraphernalia used for packaging and distributing narcotics and various quantities of narcotics. In total, the agents seized 74.12 grams of cocaine base, 52.13 grams of cocain HCL, 106.3 grams of heroin HCL and 35.0 grams of a heroin-cocaine HCL mix from the apartment. The evidence seized from the apartment indicates that it was being used as a "stash pad" for the defendant's narcotics distribution activities.

**Argument**

Defendant, through his counsel, asks the Court to withdraw or set aside Magistrate Judge Kay's order dated May 24, 2005 denying bond on the grounds that Magistrate Judge Kay could have reached a different decision. The government submits that because there has been no change in conditions, a fact which the defense does not dispute, and because the defendant has not met his burden of rebutting the presumption of dangerousness set forth in 18 U.S.C. § 3142, the order to hold the defendant without bond must stand.

    1.    <u>No Changed Conditions</u>

A change in conditions after the time of the initial bond review hearing but before trial may warrant reconsideration of the initial detention order. The Bail Reform Act states that a hearing to assess conditions of release

> may be reopened . . . after a determination by a judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

§ 3142(f). There has been absolutely no change in conditions since the time of the initial detention order to warrant reconsideration of bond. It would be a unwise precedent to encourage defendants whose incarceration spans the rotation of the magistrates to renew such motions in front of a different magistrate in the hopes of obtaining a more favorable result. In the absence of changed conditions, this motion for reconsideration is a drain on the Court's valuable resources, and a decision to review Magistrate Judge Kay's initial decision will encourage future defendants to file motions for reconsideration any time they are faced with an adverse ruling.

      2.      <u>Presumption of Dangerousness Not Rebutted</u>

If a defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act (21 U.S.C. §§ 801 et. seq) "a presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e)-(f). When determining whether such conditions exist, the Bail Reform Act specifies that the Court must take into account four factors: the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger that would be posed to other persons or to the community if the defendant was released. § 3142(g). In the present case, consideration of these four statutory factors supports a strong presumption of dangerousness that is not rebutted by the facts cited in the defendant's Motion.

First, the defendant is charged by complaint with unlawful distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). When evaluating the nature and circumstances of the offense charged under § 3142(g), one factor the Court must look at is whether the offense charged involves a narcotic drug. § 3142(g)(1). The defendant was observed on four separate occasion selling amounts of heroin ranging from thirty to fifty grams to a CW who was cooperating with the FBI. Additionally, the FBI found large quantities of cocaine and heroin in his Q Street apartment. These acts support a finding of dangerousness under the first factor set forth in § 3142(g).

Second, the weight of the evidence against the defendant is substantial. There is videotape and audiotape evidence that shows the defendant selling heroin to a CW on three separate occasions. Moreover, large quantities of cocaine, crack cocaine, heroin, and heroin-cocaine mixtures, along

with paraphernalia used in the preparation and distribution of cocaine and heroin, were found in the defendant's Q Street "stash pad," and money from the third sale to the CW was found on the defendant's person at the time of his arrest. Additionally, after his arrest on May 19, 2005, the defendant gave the FBI agents a full confession regarding his sales to the CW. Based on all of this evidence, it can be concluded that the government's case against the defendant is strong.

Third, the defendant's history and characteristics further bolster the presumption that there is no condition or set of conditions that will ensure the safety of the community if he is released. The defendant has an extensive criminal history that stretches back more than forty years. Included in this history are a 1965 conviction for housebreaking, grand larceny, and petit larceny and a 1969 conviction for larceny from interstate shipment, and a 1982 conviction for distribution of a non-narcotic controlled substance. Also, at the time of his arrest, the defendant lied to FBI agents about the presence of drugs in his Q Street apartment. The defense's Motion cites the defendant's employment and his longstanding ties to the Washington Metropolitan area as evidence of the likelihood that he will appear in court and comply with the conditions of release. Yet however strong these ties may be, they do not make up for criminal activity that spans the decades.

Fourth and finally, the defendant's release would pose a substantial danger to the community. The defendant was involved in selling narcotics in the District of Columbia as recently as May of this year. Past arrests and convictions have not deterred the defendant from the conduct that led to his arrest in the present case, and there is no indication that the current charge will have any different effect in the future. In fact the presumption of dangerousness in § 3142(e) represents the Congressional finding that narcotics offenders, "as a group, are likely to continue to engage in criminal activity undeterred either by the pendency of charges against them or by the imposition of

monetary bond or other release conditions." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). In its Motion the defendant cites to *Dominguez* to support the proposition that the presumption of dangerous can be rebutted by a showing that the defendant is not a typical narcotics offender. In *Dominquez*, however, the Seventh Circuit attached weight to the fact that the defendants had no relevant criminal record as an indication of their future propensity for criminal activity. *Id*. Unlike the defendants in *Dominquez*, the defendant in this case is a career criminal. He is not likely to be deterred from committing future crimes by any condition of release that the Court might impose, and the District of Columbia community will be safer if he remains incarcerated pending trial.

Magistrate Judge Kay, in his initial order, prudently concluded that none of the aforementioned factors favor releasing the defendant on bond. In its Motion the defense contends that the presumption of dangerousness becomes irrebuttable if the Court fails to consider the defendant's past performance while under supervision, his family ties, and his employment. What exists in this case, however, is not an irrebuttable presumption, as the defense suggests, but rather a rebuttable presumption that the defense has failed to overcome with the evidence it presents in its Motion. The defendant is charged with a narcotics offense in a case with overwhelming evidence of his guilt and his criminal history and involvement with drugs indicates that he would pose an unacceptable danger to the community if released. The defense simply is unable to present sufficient mitigating factors in the face of the strong presumption of dangerousness that arises from the § 3142(g) factors.

The government submits that once again that defendant has failed to carry his burden and that

the defendant has cited no facts or circumstances that have changed since Magistrate Judge Kay made his initial finding.

**WHEREFORE** we respectfully submit that defendant's Motion for Reconsideration of Conditions of Release should be denied.

                                    Respectfully submitted,

                                    UNITED STATES ATTORNEY

BY: _____
       WILLIAM J. O'MALLEY, JR.
       Assistant United States Attorney

*Certificate of Service*

**I HEREBY** certify that I have caused a copy of the foregoing government's Response to Defendant's Motion for Reconsideration of Conditions of Release and proposed Order to be served by mail, postage prepaid, to counsel for the defendant Tinney, Robert Mance, Esquire, 1814 N Street, N.W., Washington, D.C., 20036 this 19th day of July, 2005.

_____
WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney
D.C. Bar No. 166-991
555 Fourth Street, N.W.
Washington, D.C. 20001
(202) 305-1749